```
                  UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF MISSISSIPPI
                         EASTERN DIVISION


DR. GLORIA DANSBY-GILES                                      PLAINTIFF


VS.                           CIVIL ACTION NO. 3:10CV214TSL-FKB


JACKSON STATE UNIVERSITY                                     DEFENDANT
```

### MEMORANDUM OPINION AND ORDER

In a prior opinion entered by the court on March 31, 2011, the court set forth plaintiff Dr. Gloria Dansby-Giles' history of litigation against Jackson State University (JSU), her former employer, and the court described the claims she brought in this, her third lawsuit against JSU. Now, after two motions by JSU to dismiss or for summary judgment, plaintiff's claims which remain pending at this time are for sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and disability discrimination and retaliation under the Rehabilitation Act of 1973, 29 U.S.C. § 794(a). This cause is presently before the court on another motion for summary judgment by JSU. Plaintiff has responded to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes the motion should be granted in part and denied in part, as follows.

Plaintiff contends she was discriminated against on account of her gender and her alleged disability, and in retaliation for

her complaints of disability discrimination, when JSU denied her the opportunity to apply for or be considered for certain coordinator positions within JSU's Department of School, Community and Rehabilitation Counseling (SCRC), in which she is employed as a tenured professor.  To succeed on any of these claims, plaintiff must establish a *prima facie* case of discrimination/retaliation.  Plaintiff's *prima facie* claim of gender discrimination requires proof that (1) she is a member of a protected class; (2) she was qualified for the position; (3) despite her qualification, she suffered an adverse employment decision made by defendant; and (4) a male was selected for the position.  See Smith v. Potter, 629 F. Supp. 2d 644, 650 (S.D. Miss. 2009) (internal citations omitted).  To establish a *prima facie* case of disability discrimination, plaintiff is required to show that (1) she is disabled; (2) she was nonetheless qualified to do the job; (3) an adverse employment action was taken against her; and (4) a non-disabled employee was selected for the position.  See Aldrup v. Caldera, 274 F.3d 282, 286 (5th Cir. 2001).  To establish a *prima facie* case of retaliation under the Rehabilitation Act, plaintiff must demonstrate that (1) she engaged in protected activity; (2) she was subject to an adverse employment action; and (3) there is a causal link between the protected activity and the adverse employment action.  Hernandez v. Yellow Transp., Inc., 670 F.3d 644, 657 (5th Cir. 2012).

... 

For discrimination claims, "[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting or compensating." Green v. Adm'rs of Tulane Educ. Fund, 284 F.3d 642, 657 (5th Cir. 2002)). In the retaliation context, "[m]aterially adverse actions are not limited to ultimate employment decisions but include any actions that would dissuade a reasonable employee from exercising his rights under the [Rehabilitation Act]." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 126 S. Ct. 2405, 2409, 165 L. Ed. 2d 345 (2006). That is, an employee suffers an "adverse employment action" if "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 61–67, 126 S. Ct. 2405.

Plaintiff has identified five coordinator positions for which she was not selected or appointed, three of which were filled by males and all of which were filled by non-disabled persons who did not complain of disability discrimination. However, the evidence establishes that plaintiff was not qualified for one of the coordinator positions, that of Coordinator of Rehabilitation Counseling, and that her non-selection for the remaining coordinator positions did not constitute an adverse employment action.

3

According to the deposition testimony of Dr. Daniel Watkins, Dean of the College of Education and Human Development at JSU and JSU's Rule 30(b)(6) designee, JSU and the College of Education and Human Development recognize only one coordinator in the SCRC Department, and that is the Coordinator of Rehabilitation Counseling, which position is held by Dr. Dion Porter, who was selected for the position when plaintiff's husband, Dr. Frank Giles, stepped down from the post in November or December, 2006. Dr. Watkins explained that the published criteria for the position included a terminal degree in Rehabilitation Counseling, and at the time of Dr. Porter's selection for the position, only three employees in the SCRC Department held the required degree, Dr. Frank Giles, Department Chair Dr. Jean Farish and Dr. Porter.  Dr. Porter was thus the only one available within the department who possessed the necessary qualifications for the job.  Although effectively plaintiff admitted in her deposition that she was not meet the requirements for the Coordinator of Rehabilitation Counseling position, she now argues in response to JSU's motion that she only conceded she lacked the necessary qualifications because she believed there were actually published criteria for the position and has only recently come to learn that, in fact, there were no such criteria. However, Dr. Watkins testified that based on the only job description for the position that exists, a terminal degree in Rehabilitation Counseling is a requirement for

4

the position; and plaintiff admittedly did not possess such degree.

Plaintiff complains that she was not considered or selected for any of four other coordinator positions in the SCRC Department, including Counseling Laboratory Coordinator, filled by Dr. Rannie Lewis; Coordinator of the Specialist Program, filled by Dr. Nanolla Yazdini; Coordinator of School Counseling, filled by Ronica Arnold; and Coordinator of Community Counseling, filled by Dr. Regina Felts-McMurtery.  However, her non-selection for these positions was not an adverse employment action for purposes of her discrimination claims, as non-selection to the positions did not deny her a promotion or compensation; and neither could her non-selection for these positions reasonably be found to be a "materially adverse" employment action as required for her retaliation claim.

Dr. Watkins explained in his testimony that these four positions about which plaintiff complains are not recognized by JSU as paid positions and are instead positions created or established by and within the SCRC Department as part of that department's organizational structure.  He maintained that while persons within a department may choose how to organize their department and may choose to denominate certain persons as coordinators to reflect their assumed and/or assigned duties, nevertheless, from JSU's perspective, Dr. Porter is the only bona

5

fide coordinator in the SCRC Department.  He further maintained that there is no compensation associated with any of the other supposed coordinator positions, either directly or indirectly.

Plaintiff has submitted an affidavit in which she declares that "[u]pon reviewing the documents we obtained in discovery from JSU it certainly appears that those persons who received the coordinator positions ... received financial benefits."  But this is nothing more than speculation and is contradicted by Dr. Watkin's testimony that the positions did not involve remuneration of any sort.  Plaintiff posits that while coordinators may not command a higher salary solely by virtue of their positions as coordinators, there is still a financial benefit in that coordinators have access to and are allowed to have an "overload" of students, for which they are compensated in addition to their base salary.  However, she has offered no evidence to support this assertion, and Dr. Watkins flatly denied that being a coordinator gives the professor access to more students.[1]

Plaintiff finally argues that "one of the advantages of being a coordinator is that the selection enhanced one's Vita, one's stature, contributed to a favorable annual evaluation, and made

---

[1] Dr. Watkins stated unequivocally, "[T]he coordinators receive no pay for the work that they're doing.  They receive no additional monies for having that designation, and I just don't see how [plaintiff] would have lost money [by not] obtaining that position.  It's not a monetary position."  When asked if the designation gave the professor access to more students, he stated "No, no.  I disagree with that entirely."

6

salary increases more likely via promotion." Clearly, however, the connection plaintiff attempts to draw between the coordinator position (or title) and the potential for financial (or other) reward is far too tenuous to support her claim that the denial of the position could reasonably be found to be a materially adverse employment action, much less an ultimately employment decision. Certainly, there is no evidence either that plaintiff's own evaluations suffered in the least as a result of her not being appointed as a coordinator. On the contrary, plaintiff points out that she has consistently received high marks on her annual evaluations, and JSU points out that she has consistently received the highest salary increases in the SCRC Department. See Hernandez v. Napolitano., No. EP-10-CV-480-KC, 2012 WL 641033, 12 (W.D. Tex. Feb. 27, 2012) (finding no materially adverse employment action where there was no change in the plaintiff's "job title, grade, salary, or benefits, and there [was] no evidence that Plaintiff has suffered a diminution in prestige") (citing Stewart v. Miss. Transp. Comm'n, 586 F.3d 321, 332–33 (5th Cir. 2009) (holding that a significantly increased workload due to a reassignment was not an adverse employment action because the reassignment did not affect "her job title, grade, hours, salary, or benefits .... and there is no evidence that she suffered a diminution in prestige or change in standing among her co-workers")). For these reasons, the court concludes that

7

defendant is entitled to summary judgment on plaintiff's claims of gender discrimination, disability discrimination and retaliation based on her non-selection as coordinator.

Plaintiff's remaining claim is for failure to accommodate her known disability. The Rehabilitation Act, which incorporates the standards of the Americans with Disabilities Act, prohibits disability discrimination, which includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee ...." 42 U.S.C. § 12112(b)(5)(A) (prohibiting an employer's failure to reasonably accommodate an employee under the ADA); Delano-Pyle v. Victoria Co., 302 F.3d 567, 574 (5th Cir.2002) ("remedies, procedures and rights available under the [Rehabilitation Act] are also accessible under the ADA"). To prevail on a claim of discrimination based on failure to accommodate a disability, the plaintiff must show that (1) the employer is covered by the statute; (2) she is an individual with a disability; (3) she can perform the essential functions of the job with or without reasonable accommodation; and (4) the employer had notice of the disability and failed to provide accommodation. Mzyk v. North East Indep. Sch. Dist., 397 Fed. Appx. 13, 16 n.3, 2010 WL 3926853, 2 n.3 (5th Cir. 2010) (citations omitted). The plaintiff has the burden to show that

the employer failed to implement a reasonable accommodation.  <u>Riel v. Elec. Data Sys. Corp.</u>, 99 F.3d 678, 682 (5th Cir. 1996).

> On a claim for failure to accommodate,
>
> [t]he employee also has the burden to request a reasonable accommodation. <u>Loulseged v. Akzo Nobel Inc.</u>, 178 F.3d 731, 735 n.4 (5th Cir. 1999).  Unless the employee's disability, resulting limitation, and necessary reasonable accommodations are obvious, the employee has the burden to "specifically identify the disability and resulting limitations, and to suggest the reasonable accommodations." [<u>Griffin v. United Parcel Service, Inc.</u>, 661 F.3d 216, 224 (5th Cir. 2011) (quoting <u>E.E.O.C. v. Chevron Phillips Chem. Co.</u>, LP, 570 F.3d 606, 621 (5th Cir. 2009)).  The employer is obligated to engage in an interactive process—a meaningful dialogue with the employee to find the best means of accommodating the disability—once the employee has satisfied this initial burden.  <u>Id.</u>; <u>Chevron Phillips Chem. Co., LP</u>, 570 F.3d at 622.  The employer is required to engage in the interactive process in good faith.  <u>Chevron Phillips Chem. Co., LP</u>, 570 F.3d at 622; <u>Loulseged</u>, 178 F.3d at 736.

<u>Sapp v. Potter</u>, No. 1:07-cv-00650, 2012 WL 3890259, 16-17 (E.D. Tex. July 26, 2012).

Plaintiff argues that she has a disability, that JSU was at all times aware of her disability, that she made repeated requests for accommodations, and that JSU failed to engage in good faith in the interactive process, as a result of which JSU failed to provide her reasonable accommodations.  In its motion for summary judgment, JSU first states that it "does not concede that Plaintiff has established, with the specificity required, that she is disabled under the Rehabilitation Act...."  However, plaintiff has submitted medical and vocational evidence which tends to show

9

that she is limited in her ability to walk, climb or stand for long periods of time, and the ability to use her hands.  "An individual with a disability is any person who (1) has a physical or mental impairment which 'substantially limits one or more of such person's major life activities'; (2) has a 'record' of such an impairment; or (3) is 'regarded' as having such an impairment." Hileman v. City of Dallas, Tex., 115 F.3d 353, 353 (5th Cir. 1997) (quoting 29 U.S.C. § 706(8)(B)); 42 U.S.C. § 12102(1).  Major life activities include "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working."  42 U.S.C. § 12102(2)(A).  There is thus at least a question of fact as to whether plaintiff has a disability.[2]  JSU does not deny that plaintiff has requested

---

[2]  Plaintiff seems to be of the view that this court has previously found that she has a disability.  To be clear, this court has not found and does not now find that plaintiff has or has had a disability.  In its prior opinion, the court stated only that "plaintiff *alleged* (in her first lawsuit) that as a result of a number of health conditions that had arisen in 2003 and 2004 (and more specifically, a condition with her hands and wrists, and a foot condition which prevented her from climbing stairs), she was a qualified person with a disability under the ADA...."; that plaintiff filed a second lawsuit "again *complaining* that although she had informed JSU and provided documentation substantiating her claim that she is a qualified person with a disability under the ADA, JSU had failed and refused to provide her reasonable and feasible accommodation for her known disability...."; and that in this, her third lawsuit, "[p]laintiff *alleges* she has had problems with her hands and wrists since April 2004 and with her feet since September 2004, and that she has continuously suffered from the impairments causing her disability since 2005."

accommodations.  And while it appears to take the position that it has provided some of the accommodations she has requested, or has at least made a good faith effort to do so, it does not purport to have provided all the requested accommodations (and plaintiff clearly contends it has not done so), nor does it explain why it has failed to do so.  Under the circumstances, the court is unable to conclude that JSU has demonstrated that it is entitled to summary judgment on plaintiff's failure to accommodate claim.[3]  Its motion will thus be denied as to this claim.

Based on the foregoing, it is ordered that JSU's motion for summary judgment is denied as to plaintiff's failure to accommodate claim and is otherwise granted.

SO ORDERED this 19th day of November, 2012.

/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE

---

[3]  As to accommodations which JSU has provided, plaintiff appears to contend that since JSU has not formally acknowledged her disability and her entitlement to such accommodations under the law, then the purported "accommodations" do not qualify as "accommodations" required by the Rehabilitation Act since JSU could take them away at its whim.  Plaintiff has offered no authority for this position.  There is no requirement that JSU must have admitted that plaintiff has a disability before it can be found to have accommodated her claimed disability.